## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION NO.** |
| ) | |
| **v.** ) | |
| ) | **Complaint for Injunctive and Other** |
| **VERTICAL INTEGRATION GROUP LLC** ) | **Equitable Relief and Civil Monetary** |
| **d/b/a CHURCHILL CLEARING CORP.,** ) | **Penalties Under the Commodity** |
| **RICHARD V. MORELLO and JUNIOR** ) | **Exchange Act** |
| **ALEXIS,** ) | |
| ) | |
| **Defendants.** ) | |

Plaintiff, U.S. Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I.   SUMMARY

1.   From at least July 16, 2011, and continuing through at least February 2013 (the "Relevant Period"), Defendant Vertical Integration Group, LLC, doing business as Churchill Clearing Corp. ("Vertical"), by and through the actions of its employees and agents, including, but not limited to Defendant Richard V. Morello ("Morello") (collectively, "Defendants"), solicited retail customers to buy and sell precious metals on a financed basis. These transactions constituted illegal, off-exchange retail commodity transactions. From at least July 16, 2011, and continuing through at least July 13, 2012, Defendant Junior Alexis ("Alexis") solicited retail customers on behalf of Vertical to buy and sell precious metals on a financed basis. These transactions constituted illegal, off-exchange retail commodity transactions.

2.     By this conduct, Defendants Vertical, Morello, and Alexis have engaged, are engaging, or are about to engage in conduct in violation Section 4(a) of the Commodity Exchange Act (the "Act"), as amended, 7 U.S.C. § 6(a) (Supp. IV 2011).

3.     Morello controlled Vertical throughout the Relevant Period and failed to act in good faith or knowingly induced Vertical's violations of the Act. Therefore, Morello is liable for Vertical's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

4.     At all relevant times, the acts and omissions of Morello, Alexis, and others were committed within the scope of their employment, agency, or office with Vertical. Therefore, Vertical is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2012), as a principal for the actions and omissions of Morello, Alexis, and any other employee or agent of Vertical in violation of the Act.

5.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the CFTC brings this action to enjoin the Defendants' unlawful acts and practices, to compel their compliance with the Act, and to further enjoin them from engaging in any commodity-related activity.

6.     In addition, the CFTC seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

7.     Unless restrained and enjoined by this Court, Defendants likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.    JURISDICTION AND VENUE

8.    Section 6c(a) of the Act authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or of any rule, regulation, or order thereunder, 7 U.S.C. §§ 9, 15.

9.    The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2)(D) and 6(c)(1) of the Act, as amended by the Dodd-Frank Act, 7 U.S.C. §§ 2(c)(2)(D), 9(c)(1), 15 (Supp. IV 2011).

10.    Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants transacted business in this District, and certain transactions, acts, and practices alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

## III.    THE PARTIES

### A.    Plaintiff

11.    Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, as amended, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2013).

### B.    Defendants

12.    Defendant **Vertical Integration Group LLC,** doing business as Churchill Clearing Corp., was, during the Relevant Period, a Florida limited liability company with its principal place of business in Lake Worth, Florida.  Vertical is a telemarketing firm that solicits retail customers to execute financed precious metals transactions.  Vertical ceased doing business

3

on or about February 2013. Vertical has never been registered with the Commission in any capacity.

13.    Defendant **Richard V. Morello** is an individual whose last known residence was Lake Worth, Florida. Morello was, at all relevant times, the majority owner, operator, and controlling person of Vertical. Morello managed and ran the day-to-day operations of Vertical, including communicating with Hunter Wise Commodities, LLC about retail metals transactions. Morello has never been registered with the Commission in any capacity.

14.    Defendant **Junior Alexis** is an individual who resides in Boynton Beach, Florida. Alexis was an owner, along with Morello, of Vertical from at least July 16, 2011 until on or about July 13, 2012. Alexis has never been registered with the Commission in any capacity.

## IV.    RELATED ENTITY

15.    Vertical introduced customers to **Hunter Wise Commodities, LLC** ("Hunter Wise"), a precious metals dealer that confirmed the execution of customer precious metal transactions.

16.    Hunter Wise is a Nevada company that held itself out on its website as "a physical commodity trading company, wholesaler, market maker, back-office support provider, and finance company." Hunter Wise purported to offer, enter into, and confirm the execution of retail commodity transactions involving gold, silver, platinum, palladium, and copper throughout the United States using a network of telemarketing solicitors such as Vertical that it refers to as "dealers."

17.    On February 25, 2013, following an evidentiary hearing, the U.S. District Court for the Southern District of Florida, in an action captioned *United States Commodity Futures Trading Commission v. Hunter Wise Commodities, LLC, et al.*, entered a preliminary injunction

4

prohibiting Hunter Wise and other related defendants from, *inter alia*, offering investments in physical metals to the retail public, freezing Hunter Wise's assets, and appointing a special corporate monitor to assume control over Hunter Wise. See Order on Plaintiff's Motion for Preliminary Injunction, Doc. No. 78, Case No. 9:12-cv-81311-DMM (SD Fla. Feb. 25, 2013).

## V.   STATUTORY BACKGROUND

18.    Section 2(c)(2)(D) of the Act, as amended by the Dodd-Frank Act, 7 U.S.C. § 2(c)(2)(D), gives the Commission jurisdiction over "any agreement, contract, or transaction in any commodity" that is entered into with, or offered to, a non-eligible contract participant ("ECP") "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis" ("retail commodity transactions") with respect to conduct occurring on or after July 16, 2011, subject to certain exceptions not applicable here. Section 2(c)(2)(D) of the Act makes Section 4(a) of the Act applicable to retail commodity transactions "as if" such transactions are contracts for the sale of a commodity for future delivery.

19.    The Act defines an ECP, in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual. 7 U.S.C. § 1a(18)(xi).

20.    At least some , if not all, of Vertical's retail customers were not ECPs.

21.    Section 4(a) of the Act, 7 U.S.C. § 6(a), in relevant part, makes it unlawful for any person to offer to enter into, execute, confirm the execution of, or conduct any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise

dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market.

## VI. FACTS

22. From at least July 16, 2011, and continuing through at least February 2013, Vertical was a telemarketing firm that solicited retail customers to engage in financed precious metals (gold, silver, platinum, and palladium) transactions. Although Vertical also offered precious metals on a fully paid basis, the vast majority of its business was in financed precious metals transactions. It is only Vertical's financed precious metals transactions through Hunter Wise that are at issue here.

23. At various times during the Relevant Period, Vertical employed Morello, Alexis, and at least three other individuals to, among other things, solicit retail customers to engage in financed precious metals transactions.

24. Morello, Alexis, and Vertical's other employees conducted nearly all of their solicitations by telephone. When soliciting customers for financed precious metals transactions, Morello, Alexis, and Vertical's other employees represented that to purchase a certain quantity of metal, the customer needed to deposit a percentage of the total metal value, and that customer would receive a loan for the remaining amount. Vertical's website required an initial minimum deposit of 25% of the customers' metals purchase. Vertical charged customers a "set up fee" for the account, commissions for any transactions, and financing charges for the amount financed.

25. After a customer invested, Vertical contacted Hunter Wise to effectuate the transaction. Vertical collected the funds needed for the transaction from the customer and sent

6

them to Hunter Wise. Hunter Wise provided back office support services to Vertical and provided access to the details of the transaction to the customer.

26.     With respect to the retail leveraged transactions, Vertical charged customers commissions for purchasing the metal and interest on loans to buy metal. With the exception of a few instances which are not the subject of this action, Vertical's customers did not take delivery of precious metals. Rather, the vast majority of Vertical's customers were only speculating on the price direction of the precious metals.

27.     During the Relevant Period, Vertical introduced approximately 39 customers to Hunter Wise and transferred approximately \$1 million to Hunter Wise for the purchase and financing of precious metals. During the Relevant Period, Vertical received commissions and fees totaling approximately \$554,566 for the retail financed precious metals transactions executed through Hunter Wise.

28.     Neither Vertical nor Hunter Wise bought, sold, loaned, stored, or transferred any physical metals for these financed precious metals transactions. Likewise, neither Vertical nor Hunter Wise actually delivered any precious metals to any customers with respect to these financed metals transactions.

29.     At all times during the Relevant Period, Morello was the Chief Executive Officer, Manager, and majority shareholder of Vertical. He exercised control over the day-to-day operations of Vertical. He had authority to hire and fire Vertical employees and he oversaw their activities. He opened bank accounts and entered into agreements on behalf of Vertical.

## VII. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE
### VIOLATIONS OF SECTION 4(A) OF THE ACT:
### ILLEGAL OFF-EXCHANGE TRADING

30. Paragraphs 1 through 29 of this Complaint are realleged and incorporated herein by reference.

31. During the Relevant Period, the retail commodity transactions described in this Complaint were offered and entered into (a) on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis, (b) with persons who are not ECPs or eligible commercial entities as defined by the Commodity Exchange Act, and (c) not made or conducted on, or subject to, the rules of any board of trade, exchange or contract market.

32. The retail commodity transactions described herein are commodities as defined by Section 1a(4) of the Act, 7 U.S.C. § 1a(4).

33. As set forth above, from at least July 16, 2011, until at least February 2013, Defendants Vertical and Morello violated Section 4(a) of the Act by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting or accepting orders for, or otherwise dealing in, transactions in, or in connection with, retail commodity transactions.

34. As set forth above, from at least July 16, 2011, until at least July 13, 2012, Defendant Alexis violated Section 4(a) of the Act by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting or accepting orders for, or otherwise dealing in, transactions in, or in connection with, retail commodity transactions.

8

35. Each offer to enter into, entrance into, execution, confirmation, solicitation, or acceptance of an order for a retail commodity transaction made during the Relevant Period is alleged as a separate and distinct violation of Section 4(a) of the Act.

36. Morello directly or indirectly controlled Vertical and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Vertical's violations of Section 4(a) alleged in this Complaint. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13(b), Morello is liable for each of Vertical's violations of Section 4(a) of the Act.

37. The acts and omissions of Morello, Alexis, and the other employees of Vertical described in this Complaint were done within the scope of their employment with Vertical. Therefore Vertical is liable as a principal for each act, omission, or failure of Morello, Alexis, and Vertical's others employees constituting violations of Section 4(a) pursuant to 2(a)(1)(B) of the Act, 7 U.S.C § 2(a)(1)(B).

## VIII.  RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A. An order finding that Defendants violated Section 4(a) of the Act, as amended, 7 U.S.C. § 6(a);

B. An order of permanent injunction permanently restraining, enjoining and prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct in violation of Section 4(a) of the Act;

C. An order of permanent injunction prohibiting Defendants and any of their successors from, directly or indirectly:

1)      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a);

2)      Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. §1.3(hh) (2013)) ("commodity options"), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, as amended, and as further defined by Commission Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx) (2013)) ("swaps"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal accounts or for any accounts in which they have a direct or indirect interest;

3)      Having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded or executed on their behalf;

4)      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

5)      Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

10

      6)      Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013); and

      7)      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2013)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013).

D.     Enter an order requiring that Defendants, as well as any of their successors, disgorge to any officer appointed or directed by the Court all benefits received from the acts or practices that constitute violations of the Act, as amended, as described herein, including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, plus pre-judgment interest thereon from the date of such violations, plus post-judgment interest;

E.     Enter an order requiring Defendants, as well as any of their successors, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity whose funds were received or utilized by them in violation of the provisions of the Act, as described herein, plus pre-judgment interest thereon from the date of such violations, plus post-judgment interest;

F.     Enter an order directing Defendants and any of their successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the customers

whose funds were received by them as a result of the acts and practices, which

constituted violations of the Act, as amended, as described herein;

G.    Enter an order requiring Defendants to pay civil monetary penalties under the Act,

to be assessed by the Court, in amounts of not more than the greater of: (1) triple

their monetary gain for each violation of the Act, as amended, or (2) $140,000 for

each violation committed on or after October 23, 2008;

H.    Enter an order requiring Defendants to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

I.    Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.

Respectfully submitted,

Alan I. Edelman
Senior Trial Attorney
Florida Bar #A5500704
Michael Solinsky
Chief Trial Attorney
Division of Enforcement
U.S. Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5000
Facsimile:  (202) 418-5987
Attorneys for Plaintiff
msolinsky@cftc.gov
aedelman@cftc.gov

Dated:    1/13/14

12