UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-80038-CIV-BLOOM/VALLE

COMMODITY FUTURES TRADING COMMISSION,

       Plaintiff,

v.

VERTICAL INTEGRATION GROUP, LLC,
*d/b/a* CHURCHILL CLEARING CORP., and
RICHARD V. MORELLO, and,
JUNIOR ALEXIS,

       Defendants.

_____/

## ORDER FOR ENTRY OF DEFAULT JUDGMENT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND ANCILLARY EQUITABLE RELIEF AGAINST DEFENDANTS VERTICAL INTEGRATION GROUP LLC, RICHARD V. MORELLO, AND JUNIOR ALEXIS

THIS CAUSE came before the Court on Plaintiff's Motion for Entry of Default Judgment ("Motion"), ECF No. [23], filed on September 18, 2014. A Clerk's Default was entered against Defendants Vertical Integration Group and Richard V. Morello on April 10, 2014, ECF No. [14], and a Clerk's Default was entered against Defendant Junior Alexis on April 28, 2014, ECF No. [16], as Defendants failed to appear, answer, or otherwise plead to the Complaint, ECF No. [1], despite having been served. *See* ECF Nos. [8], [12]. The Court has carefully considered the Motion, the record and the applicable law.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "'[A] defendant's default does not in itself warrant the court entering a default judgment.'"

1

CASE NO. 14-80038-CIV-BLOOM/VALLE

*DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).   Granting a motion for default judgment is within the trial court's discretion.   *See Nishimatsu*, 515 F.2d at 1206.   Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered.   *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default . . . .").

Upon a review of Plaintiff's submissions, including the Complaint, the allegations of which are well-pleaded and are hereby taken as true, the Motion and the exhibits attached thereto, *see* ECF Nos. [23-2] through [23-17], it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiff.

1.    The Court hereby enters the following Findings of Fact and Conclusions of Law:

## I.    FINDINGS OF FACT

**A.    The Parties**

4.    Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the Act, as amended, to be codified at 7 U.S.C. §§ 1 *et seq*. (2012), and the Commission's Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2013).

5.    Defendant Vertical Integration Group, LLC was, from at least July 16, 2011, and continuing through at least February 2013 ("Relevant Period"), a Florida limited liability company with its principal place of business in Lake Worth, Florida.   Vertical was a

telemarketing firm that solicited retail customers to execute financed precious metals transactions. Vertical has never been registered with the Commission in any capacity.

6. Defendant Richard V. Morello is an individual whose last known residence was Lake Worth, Florida. Morello was a Managing Member of Vertical and oversaw its day-to-day operations, including communications with Hunter Wise Commodities, LLC ("Hunter Wise") about retail metals transactions. Morello has never been registered with the Commission in any capacity.

7. Defendant Junior Alexis is an individual whose last known residence was in Boynton Beach, Florida. Alexis was, along with Morello, a Managing Member of Vertical. On or about July 13, 2012, Alexis submitted a Resignation of Member, Managing Member, or Manager Form to the State of Florida. Alexis has never been registered with the Commission in any capacity.

**B.    Defendants Solicited Retail Customers to Buy Precious Metals on a Financed Basis**

8. During the Relevant Period, Vertical was a telemarketing firm that solicited retail customers to engage in financed precious metals (gold, silver, platinum, and palladium) transactions. From at least July 16, 2011, and continuing through at least July 13, 2012, Alexis solicited retail customers on behalf of Vertical to buy and sell precious metals on a financed basis. Although Vertical also offered precious metals on a fully paid basis, the vast majority of its business was financed in precious metals transactions.

9. At various times during the Relevant Period, Vertical employed Morello, Alexis, and at least three other individuals to, among other things, solicit retail customers to engage in financed precious metals transactions. Morello, Alexis, and Vertical's other employees

CASE NO. 14-80038-CIV-BLOOM/VALLE

conducted nearly all of their solicitations by telephone.  When soliciting customers for financed precious metals transactions, Morello, Alexis, and Vertical's other employees conducted nearly all of their solicitations by telephone.  When soliciting customers for financed precious metals transactions, Morello, Alexis, and Vertical's other employees represented that to purchase a certain quantity of metal, the customer needed to deposit a percentage of the total metal value, and that customer would receive a loan for the remaining amount.  Vertical offered financing of up to 75% of its customers' metals purchase.  Vertical charged customers a "set up fee" for the account, commissions for any transactions, and financing charges for the amount financed.

10.     After a customer invested, Vertical contacted Hunter Wise to effectuate the transaction.  Vertical collected the funds needed for the transaction from the customer and sent them to Hunter Wise. Hunter Wise provided back office support services to Vertical and provided access to the details of the transaction to the customer.

11.     With respect to the retail leveraged transactions, Vertical charged its customers commissions for purchasing the metal and interest on loans to buy metal.  With the exception of a few instances which are not the subject of this action, Vertical's customers did not take delivery of precious metals.   Rather, the vast majority of Vertical's customers were only speculating on the price direction of the precious metals.

12.     During the Relevant Period, Vertical received approximately $1,008,583 from 39 customers whom it introduced to Hunter Wise for the purchase and financing of precious metals. At least some, if not all, of these customers were individuals who had amounts invested on a discretionary basis the aggregate of which was less than $5 million.  During the Relevant Period, Vertical received commissions and fees totaling approximately $554,566 for the retail financed

4

precious metals transactions executed through Hunter Wise.

13.    Hunter Wise never bought, sold, loaned, stored, or transferred any physical metals for these financed precious metals transactions.  Likewise, neither Vertical nor Hunter Wise actually delivered any precious metals to any of these customers in connection with financed metals purchases.  During the Relevant Period, Vertical returned only approximately $114,724 to customers.  Vertical's customers thus suffered total net losses of approximately $893,859.

### C.    Morello Controlled Vertical

14.    At all times during the Relevant Period, Morello was the Manager and majority shareholder of Vertical.  He exercised control over the day-to-day operations of Vertical.  He had authority to hire and fire Vertical employees and he oversaw their activities.  He opened bank accounts on behalf of Vertical and dealt with Hunter Wise on behalf of Vertical.

### III.    CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

15.    The Court has jurisdiction over the conduct and transactions at issue in this case pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and Section 2(c)(2) of the Act, 7 U.S.C. § 2(c)(2) (2012).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

16.    Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), in that the Defendants transacted business in the Southern District of Florida,

CASE NO. 14-80038-CIV-BLOOM/VALLE

and the acts and practices in violation of the Act occurred within this District, among other places.

**B.     Defendants Violated Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012)**

17.     Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2012), broadly applies to any agreement, contract, or transaction in any commodity that is entered into with, or offered to, a person who is not an eligible contract participant ("ECP")[1] on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis ("retail commodity transactions").

18.     Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2012), provides that, subject to certain exceptions that are not applicable here, retail commodity transactions shall be subject to Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012), "as if the agreement, contract, or transaction was a contract of sale of a commodity for future delivery."

19.     Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012), in relevant part, makes it unlawful for any person to offer to enter into, execute, confirm the execution of, or conduct any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market.

---

[1]   Section 1a(18)(xi) of the Act, 7 U.S.C. § 1(a)(18)(xi) (2012), defines an ECP as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonable likely to be owned or incurred, by the individual.

20.     During the Relevant Period, Defendants violated Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012) by offering to enter into, and entering into, retail commodity transactions that were not conducted on a Commission-designated contract market.

**C.     Morello is Liable for Vertical's Violations Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012)**

21.     During the relevant period, Morello was a control person of Vertical and failed to act in good faith or knowingly induced, directly or indirectly, the acts constituting Vertical's violations described herein.  Therefore, Morello is liable for the unlawful conduct of Vertical and its violations of the Act, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

**D.     Vertical is Liable for Morello's and Alexis's Violations Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2013)**

22.     Morello and Alexis committed the acts and omissions described herein within the course and scope of their employment, agency, or office with Vertical; therefore, Vertical is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2013), for violations of the Act committed by Morello and Alexis.

### IV.     PERMANENT INJUNCTIVE RELIEF GRANTED

23.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendants Vertical, Morello, and Alexis are permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012).

24.     Defendants are also permanently restrained, enjoined and prohibited from:

CASE NO. 14-80038-CIV-BLOOM/VALLE

        a.     entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh)), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. § 1a(47), and as further defined by Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx)), and/or foreign currency (as described in Section 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account(s) or for any account(s) in which they have a direct or indirect interest;

        b.     having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on their behalf;

        c.     controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

        d.     soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

        e.     applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and/or

        f.     acting as a principal (as that term is defined in Commission Regulation 3.l(a), 17 C.F.R. § 3.1(a)), agent, or any other officer or employee of any person (as that term is

defined in Section 1a of the Act, 7 U.S.C. § 1a) registered, exempted from registration, or required to be registered with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

## V.   RESTITUTION AND CIVIL MONETARY PENALTY

### A.   Restitution

25.   Vertical and Morello, as Vertical's control person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), shall be jointly and severally liable for, and shall pay, restitution in the amount of eight hundred ninety-three thousand, eight hundred fifty-nine dollars ($893,859) ("Restitution Obligation"), plus post-judgment interest.  This figure represents the total net losses suffered by Vertical's customers during the Relevant Period.  Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of the entry of this Order pursuant to 28 U.S.C. § 1961 (2006).

26.   Alexis was neither a control person of Vertical, nor was he employed throughout the entirety of the Relevant Period.  Alexis therefore shall be jointly and severally liable with Vertical and Morello for, and shall pay, five hundred sixty-three thousand, one hundred thirty-one dollars ($563,131) of the total restitution amount ordered in Paragraph 22 above ("Restitution Obligation"), plus post-judgment interest.  Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of the entry of this Order pursuant to 28 U.S.C. § 1961 (2006).

27.   Defendants shall make payments of the Restitution Obligation to Melanie

CASE NO. 14-80038-CIV-BLOOM/VALLE

Damian, Esq., the corporate monitor appointed by the Court in *CFTC v. Hunter Wise Commodities, LLC*, No. 12-81311-CIV (S.D. Fla. Feb. 25, 2013) ("Monitor"), and the Monitor shall collect restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the Monitor shall not be liable for any action or inaction arising from the Monitor's appointment, other than actions involving fraud.

28.     Defendants shall make Restitution Obligation payments under this Order to the Monitor in the name "Vertical Integration Group Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to the Monitor at the office of Damian & Valori LLP, 1000 Brickell Avenue, Suite 1010, Miami, Florida 33131, under cover letter that identifies the Defendant making payment and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

29.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' customers identified by Monitor and/or the Commission, or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the

Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth below.

30. Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' customers whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

31. The Monitor shall provide to the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

32. Any amounts paid to any customer as determined by the Monitor shall not limit the ability of that customer to prove that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

33. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants, to ensure continued compliance with any provision of this Order, and to hold Defendants in contempt for any violations of any provision

CASE NO. 14-80038-CIV-BLOOM/VALLE

of this Order.

34.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.     Civil Monetary Penalty**

35.     Vertical and Morello, as Vertical's control person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), shall be jointly and severally liable for, and shall pay, a civil monetary penalty of one million, six hundred sixty-three thousand, six hundred ninety-eight dollars ($1,663,698) within ten (10) days of the date of entry of this Order ("CMP Obligation"), plus post-judgment interest.  This figure represents three times the monetary gain to Vertical as a result of its violations, as provided for in Section 6c(d) of the Act, 7 U.S.C. § 13a-l (2012).  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2006).

36.     Alexis was neither a control person of Vertical, nor was he employed throughout the entirety of the Relevant Period.   Therefore, Alexis shall pay a civil monetary penalty of one hundred forty thousand dollars ($140,000), as provided for in Section 6c(d) of the Act, 7 U.S.C. § 13a-l (2012), within ten (10) days of the date of entry of this Order ("CMP Obligation"), plus post-judgment interest.  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2006).

37.     Defendants shall pay their CMP Obligation by electronic funds transfer, U.S.

postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables - AMZ 340
> E-mail Box: 9-AMC-AMZ-AR-CFTC
> DOT/FANMMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendants shall accompany payment of their CMP Obligation with a cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

## VI.    MISCELLANEOUS PROVISIONS

38.    Any acceptance by the Commission or the Monitor of partial payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver of Defendants' obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

39.    Defendants shall not transfer, or cause others to transfer, funds or other property 9belonging to Defendants to the custody, possession, or control of any members of their family

13

CASE NO. 14-80038-CIV-BLOOM/VALLE

or any other person or entity for the purpose of concealing such funds from this Court, the Commission, the Monitor, or any officer appointed by this Court.

40.     All notices required by this Order shall be sent by certified mail, return receipt requested.  Notices to the Commission shall be sent to the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.  Defendants shall provide the Commission and the Monitor with written notice of their contact telephone numbers and/or mailing addresses within thirty (30) calendar days of this Order.  Until such time as Defendants satisfy their Restitution Obligation and CMP Obligation as set forth in this Order, Defendants shall provide written notice by certified mail to the Commission and the Monitor of any change to their telephone number and/or mailing address within ten (10) calendar days of the change(s).

41.     Nothing shall serve to amend or modify this Order in any respect whatsoever, unless: (a) reduced to writing; and (b) approved by order of this Court.

42.     If any provision of this Order or if the application of any provision or circumstance is held invalid, the remainder of the Order and the application of its provisions to any other person or circumstance shall not be affected by the holding.

43.     The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Order by personal service, e-mail, facsimile, or otherwise, insofar as he or she is acting in active concert or participation with Defendants.

44.     This Court shall retain jurisdiction of this cause to assure compliance with this Order, the Restitution Obligation, the CMP Obligation, and for all other purposes related to this

14

action.  This Order shall be interpreted and enforced according to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Florida, and all provisions of the Act and Commission Regulations relating or referring to the obligations hereunder.

45.     Copies of this Order may be served by any means, including U.S. Mail, facsimile transmission, e-mail, United Parcel Service, and Federal Express, upon Defendants and any other entity or person that may be subject to any provision of this Order.

Also, the Court has received correspondence from Defendant Richard Morello on September 22, 2014—well after the Clerk's Entry of Default and days after Plaintiff's instant Motion—informing the Court of his financial situation and his inability to obtain counsel, "categorically deny[ing] all allegations filed against him personally, and/or against Vertical Integration Group," and requesting the Court to "advise [him] as to how to respond properly to these allegations, and/if what remedies or options are available to [him]."  ECF No. [26] at 1. The Court finds that this correspondence is untimely  and is, thus, stricken from the record.

It is accordingly

**ORDERED AND ADJUDGED** that:

1.     Plaintiff's Motion for Entry of Default Judgment, Permanent Injunction, Civil Monetary Penalties, and Ancillary Equitable Relief Against Defendants, **ECF No. [23]** is **GRANTED**.

2.     Defendant Richard Morello's correspondence, **ECF No. [26]** is **STRICKEN** due to being untimely filed.

CASE NO. 14-80038-CIV-BLOOM/VALLE

3.      The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on this 29th day of

September, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

16